In the Matter of the Application of EDWARD J. BERG, Petitioner, for an Order of Certiorari against THE BOARD OF EDUCATION OF THE CITY OF UTICA, N. Y., and Another, Respondents.

Fourth Department, June 29, 1928.

*Merrill & Quinn* [*August Merrill* of counsel], for the petitioner.

*Pascal C. J. De Angelis,* for the respondents.

PER CURIAM. Petitioner was employed by the board of education of the city of Utica to prepare the plans for a junior high school in that city but after same were finished and accepted, ready for bids, the board abandoned the project because of the high cost entailed.

When the controversy was formerly before us we disposed of all the questions involved except that of the value of petitioner's services and remitted the matter to the board of education to make a new audit and award on such information as it then had or might acquire on a new hearing. (*Matter of Berg* v. *Board of Education,* 213 App. Div. 357.) Further hearings have been had and petitioner's claim is now audited and allowed at $26,729.80. Respondents' brief concedes that, because of an error in computation, this amount is insufficient and should be increased to the sum of $29,411.35. We also understand that the board now admits that it was in error in computing petitioner's compensation at three and six-tenths per cent on the cost of the building instead of at four and one-half per cent thereof, as provided in the contract between the parties. (*Matter of Berg* v. *Board of Education, supra.*) This correction would again increase the award, according to respondents' deductions from the evidence, to $36,764.19.

In order to avoid any uncertainty we should perhaps say that a review of the original record confirms our opinion, formerly expressed, that a definite contract was made with petitioner to pay him six per cent on the cost of construction, based on the lowest bid made therefor, of which four and one-half per cent was to be paid on completion of the plans with scale details; the remaining one and one-half per cent to be paid proportionately as the work progressed.

Since our former order the board of education has procured to be made a careful and detailed estimate of the probable cost of the construction in April, 1920, of the building as planned by the

petitioner. This work was done by a contractor of large experience employed by the board for that purpose and both he and an expert in behalf of petitioner testified at length, concerning these matters, upon the second hearing. The present award was made after consideration of all the facts and evidence and the former record as well as that of the subsequent hearing is before us.

The cost of the construction of the building as a basis for the award is now determined by respondents to be thirty-three cents per cubic foot. This we think to be clearly insufficient and against the weight of the evidence. This is a proceeding in certiorari and we may scan the evidence and if we find a preponderance thereof against the determination, may reverse. (*People ex rel. McAleer* v. *French*, 119 N. Y. 502.) The determination and award states among other things: " We base this claim on the testimony of Mr. Berg that the building could have been constructed when talked about in 1919 at a cost of 30 cents per cubic foot, and other credible testimony that there was an increase of 10 per cent in the cost of construction from the fall of 1919, to April, 1920, making the cost per cubic foot 33 cents in April, 1920." The building in' question was first talked about between the parties in June, 1919. At the original hearing Mr. Berg, on cross-examination, testified: " I figured that we could have built that school in Utica at the time when the job was first talked of for about thirty cents a cubic foot, and roughly, we could have built it here at the time the job was abandoned for forty-five or forty-six or forty-seven cents." At the same hearing another witness, called in behalf of respondents, testified that as nearly as he could figure, there was an increase in the cost of building between the fall of 1919 and April, 1920, of not to exceed ten per cent; later he stated that in giving that rate of increase he referred to " late in the fall, before winter," and that there had been a constant rise in such cost between the springs of 1919 and 1920.

As to what that increase had been between the months of June and " late in the fall " was not brought out and is not taken into account by the finding now under review. The board seems to have taken petitioner's figure of thirty cents per cubic foot as of June, 1919, and added thereto three cents to represent the increased cost of ten per cent between the late fall and the following April and thus established a rate of thirty-three cents per cubic foot. This method not only disregards any increase in cost between June, 1919, and late the following fall but entirely ignores petitioner's testimony that by April, 1920, the cost had increased to forty-five, forty-six or forty-seven cents.

On the hearing following our former decision both petitioner's

expert and the one employed by respondents submitted detailed figures of the probable cost of the construction and were examined regarding same, as were also other witnesses in relation to various features of the building such as plumbing, electric wiring and the like. In behalf of petitioner the probable cost was in that manner shown to be $1,132,403.64, while respondents' expert placed it at $1,037,480.47. The cubage of the building as given by respondents' witness and later corrected by concession on respondents' brief, is 2,475,703 feet; as set forth in the petition herein it is 2,363,595 feet while on the former hearing it was testified by petitioner to be 2,384,533 feet.

Adopting respondents' method of arriving at the cost of the building by a computation based on its cubic feet and using petitioner's claim of at least forty-five cents a foot, these cubage claims show a probable cost of $1,114,065.85, $1,063,617.75 and $1,073,039.85 respectively.

Of course the exact cost of an enterprise of this magnitude can only be known after it is completed. Advance estimates can only be approximate, but the results of these computations based on cubage correspond so closely to the conclusions of the experts as drawn from a detailed examination of the plans and investigation of the prices of the multitude of things entering into such a construction, that it would seem as if their testimony is fairly accurate and that petitioner's claim that the building, as planned, would cost forty-five cents a cubic foot is not far from right and much closer to the fact than is that of thirty-three cents, allowed by respondents.

Except as later mentioned these two records contain practically nothing else from which the probable cost of this building at the time respondents decided not to erect it can be ascertained. There is, to be sure, testimony that a building suitable for the purpose and having the same general features could have been built for less money than that planned by petitioner, but that is of little consequence. He prepared plans for the kind of a building the respondents wanted and his plans were accepted. He is entitled to compensation for the work he actually did, not for what he might have done.

At the close of the second hearing petitioner stipulated, on the record, to accept the estimate of $1,037,480.47 finally made by respondents' witness Bedford. An earlier estimate of this witness was for $999,061.35, but was afterwards increased by $38,419.12 because of certain items omitted. This witness, who was employed by respondents because of his standing and experience, further

testified that, notwithstanding such increase, he would be willing to take the contract for the amount of his former estimate. In other words, there is evidence in the case that respondents could have procured their proposed building to be constructed for, in round numbers, $1,000,000, and by a contractor presumably acceptable to them. This evidence taken in connection with that already discussed leads us to believe that that sum fairly represents a low bid and the probable cost, so far as the same can be now ascertained; that under the contract between the parties petitioner is entitled to an award of $45,000 less $400, concededly to be offset, with interest thereon from May 10, 1921; that there was no justification for an award of $26,729.80.

The determination should be annulled and the matter remitted to the board of education to make a new audit and award in accordance with this opinion, with fifty dollars costs and disbursements to the petitioner.

All concur. Present — HUBBS, P. J., CLARK, SEARS, CROUCH and SAWYER, JJ.

Order of certiorari sustained, determination of the board of education annulled, and matter remitted to the board of education to make a new audit and award in accordance with the opinion, with fifty dollars costs and disbursements to the petitioner.